1
2
3
4
5
6        UNITED STATES DISTRICT COURT
7        SOUTHERN DISTRICT OF CALIFORNIA
8

| | |
|---|---|
| 9  TREMAYNE CARROLL, <br> 10  CDCR #H-73384, <br><br> 11                                    Plaintiff, <br><br> 12                    v. <br> 13  C/O TOELE, et al., <br><br> 14                                    Defendants. <br> 15 <br> 16 <br> 17 <br> 18 <br> 19 <br> 20 <br> 21 <br> 22 <br> 23  TREMAYNE CARROLL, <br> 24  CDCR #H-73384, <br><br> 25                    v. <br> 26 <br> 27  WARDEN POLLARD, et al., <br><br> 28                                    Respondents. | Case No.:  3:20-cv-00079-BAS-RBM <br> Case No.:  3:20-cv-00010-BAS-BGS <br><br> **ORDER:** <br><br> **1)  GRANTING MOTION TO PROCEED IFP; GRANTING IN PART MOTION TO AMEND; OVERRULING OBJECTION; AND SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b) IN CIVIL CASE No. 3:20-cv-00079-BAS-RBM** <br> **[ECF Nos. 2, 5, 7]** <br><br> **2)  CONSTRUING OBJECTION AS MOTION FOR AND EXTENDING TIME TO FILE SECOND AMENDED HABEAS PETITION IN CIVIL CASE No. 3:20-cv-00010-BAS-BGS** <br> **[ECF No. 8]** |

1

1    Plaintiff Tremayne Carroll, a prisoner at Richard J. Donovan Correctional Facility
2    ("RJD"), has two cases currently pending before in this Court:  one involving a petition for
3    writ of habeas corpus pursuant to 28 U.S.C. § 2254, and another civil rights complaint filed
4    pursuant to 42 U.S.C. § 1983.  Carroll is proceeding pro se in both cases.

5    **I.    Background**

6    Carroll's habeas case, *Carroll v. Pollard, et al.*, 3:20-cv-00010-BAS-BGS
7    ("*Pollard*"), was filed on January 2, 2020.  (*See Pollard*, "Pet.," ECF No. 1.)  The Court
8    dismissed it on January 16, 2020 because Carroll failed to pay the $5 filing fee required by
9    28 U.S.C. § 1914(a) and did not allege a cognizable habeas corpus claim.  (*Id.*, ECF No.
10   4.)  In response, Carroll filed an amended petition, but it included a mishmash of claims—
11   some appearing to challenge the validity of his Los Angeles Superior Court conviction and
12   sentence, some involving lost custody credits at RJD, and some related to other conditions
13   of his confinement at RJD unrelated to either the length or validity of his underlying
14   sentence.  (*Id.*, "First Am. Pet.," ECF No. 5.)  Because Carroll also failed to pay any filing
15   fee, and had since filed a separate civil rights case, *Carroll v. Toele, et al.*, 3:20-cv-00079-
16   BAS-RBM ("*Toele*"), the Court dismissed Carroll's amended habeas petition in *Pollard*,
17   and instructed him once more to pay the filing fee or request leave to proceed in forma
18   pauperis, and to file a second amended petition.[1]  (*See Pollard*, ECF No. 6.)  Carroll has
19   not filed a second amended habeas petition in that case, however, and the April 6, 2020
20   deadline set for doing so has elapsed.

21   In his civil rights case, Carroll has filed a motion to proceed in forma pauperis
22   ("IFP").  (*See Toele*, ECF No. 2.)  His complaint names seven RJD correctional officers
23   and sergeants, a "psych tech," and 100 unidentified John/Jane Doe(s) as defendants.  (*Id.*,
24   "Compl.," ECF No. 1.)  Carroll explicitly invokes only the Eighth Amendment's

---

[1] To the extent Carroll wished to challenge either the validity of his Los Angeles Superior Court conviction or the denial of his petition for re-sentencing under California's Proposition 36, the Court advised him to file a separate habeas petition in the Central District of California, Western Division.  (*See* ECF No. 6 at 2–3.)

prohibition against cruel and unusual punishment as the constitutional basis of his claims, but he also claims to have been falsely targeted as a "snitch" and a "child molester" "in retaliation" for his having reported "employee sexual misconduct." (*Id.* at 1, 3–4.)  He further alleges to have "suffered multiple falls in [his] wheelchair" between "2015–2020." (*Id.* at 1, 3–5.)

Carroll also claims his "life is in imminent danger if [he is] housed anywhere at RJD (including RJD-ASU), KVSP, CMF, SVSP, COR, HDSP, SAT-F or [other] Green Wall Facilities." (*Id.* at 6.)  In support, he attaches as an exhibit an unsigned petition seeking injunctive relief on his behalf and authored by a person who "can't say [his] name in fear of retaliation," as well as two letters he addressed to the Director of the California Department of Corrections and Rehabilitation ("CDCR"), various other CDCR executives, the former Governor of California, and the Wardens at RJD, CSP-LAC, HDSP, and SVSP, both dated in May 2018, and broadly alleging past incidents of sexual assault, multifarious set-ups, and falsified rules violations at all those facilities, dating as far back as 2016. (*Id.* at 9–17.)

After he filed his complaint and IFP in *Toele*, Carroll also submitted a document entitled "Petition to Amend and Compel Writ of Mandate and Naming Defendant(s)," in which he contends another RJD sergeant and correctional officer conspired with the defendants he originally named to violate his rights.   (*See id.*, ECF No. 5 at 1.)  Carroll also seeks to "add[] Drive Wheelchair Manufacturers and State Vehicle Drivers" for injuries he and other inmates "suffered while seated in wheelchair[s] on state vehicles" at various prisons throughout the State. (*Id.*)  Attached to this document are several additional exhibits, which he appears to offer in support of the allegations in his complaint. (*Id.* at 2–20.)

Finally, on April 15, 2020, Carroll submitted a document entitled "Objection to Court[']s Ruling, Reconsideration, Extension (90) Days, Appointment of Counsel" and listing both his habeas case, No. 3:20-cv-00010-BAS-BGS, and his civil rights case, No. 3:20-cv-00079-BAS-RBM, in its caption. (*See Toele,* ECF No. 7; *Pollard*, ECF No. 8.)  In

3

this document, which has been accepted for filing in both cases, Carroll claims he has "been back and forth to outside hospitals for various issues related to medical neglect and endangerment," and that this is just RJD's "latest effort to circumvent [his] due process rights." (*Id.* at 1.)  Because the Court has yet to issue *any* order in *Toele*, it appears Carroll is "objecting" to the Court's February 10, 2020 Order in *Pollard*. (*See Pollard*, ECF No. 6.)  However, he also claims to have suffered new hip injuries as a result of his recent transport and claims two additional RJD officials "drug [him] out of [his] cell" without securing his head after he fell on April 8, 2020 and suffered a seizure. (*See Toele*, ECF No. 7 at 2; *Pollard*, ECF No. 8 at 2.)  Carroll also asks that "Dr. Silva (who discriminates against blacks, transgenders, LGBTQ inmate/patients) … be added as [a] respondent[] in both entitled cases." (*Id.*)

Given all this, and for the reasons discussed below, the Court reaches several conclusions.  First, Carroll's Motion to Proceed IFP in *Toele*, Civil Case No. 3:20-cv-00079-BAS-RBM (ECF No. 2) and his Motion to Amend/Name Defendants (ECF No. 5) will be **GRANTED**.  However, some of his claims must be dismissed sua sponte pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and his Objection to Court Ruling (ECF No. 7) must be **OVERRULED**.

Second, the Court will simultaneously construe Carroll's Objection to Court Ruling in *Pollard*, Civil Case No. 3:20-cv-00010-BAS-BGS (ECF No. 8), as a request for extension of time to file a second amended habeas petition, and in light of his pro se status, and taking into consideration the means by which he has conflated his two cases, will **GRANT** him an extension of time in which to comply with the Court's February 10, 2020 Order (ECF No. 6).

## II.   Motion to Proceed IFP in *Toele* (Civil Case No. 3:20-cv-00079)

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of

$400.[2]  *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. Section 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed.  *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4).  The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid.  *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Carroll has submitted a certified copy of his trust account statement pursuant to 28 U.S.C. § 1915(a)(2) and Civil Local Rule 3.2. *Andrews*, 398 F.3d at 1119. The Court has reviewed Carroll's trust account activity, as well as the

---

[2]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Oct. 1, 2019)).  The additional $50 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

attached prison certificate verifying his available balances.  (*See* ECF No. 3, at 1-5.)  These documents show Carroll carried an average monthly balance of $21.21, had $6.00 in average monthly deposits to his trust account during the six months preceding the filing of his complaint, and had a sum of $9.25 to his credit at the time of filing.  (*See id.* at 1, 3.)

Therefore, the Court **GRANTS** Carroll's Motion to Proceed IFP (ECF No. 2) and assesses an initial partial filing fee of $4.24 pursuant to 28 U.S.C. Section 1915(b)(1).  However, the Court will direct the Secretary of the CDCR, or his designee, to collect this initial fee only if sufficient funds are available in Carroll's account at the time this Order is executed.  *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered").  The remaining balance of the $350 total fee owed in this case must be forwarded it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).[3]

---

[3] "The Prison Litigation Reform Act (PLRA) instituted a 'three-strikes' rule in an effort to disincentivize frivolous prisoner litigation." *Hoffmann v. Pulido*, 928 F.3d 1147, 1148–49 (9th Cir. 2019). "Pursuant to the PLRA, once a prisoner has had three actions dismissed as frivolous or malicious, or for failure to state a claim upon which relief may be granted, that prisoner is no longer permitted to file an action in forma pauperis unless the prisoner is in imminent danger of serious physical injury." *Id.* (citing 28 U.S.C. § 1915(g)). This "broad language covers all such dismissals: It applies to those issued both with and without prejudice to a plaintiff's ability to reassert his claim in a later action." *Lomax v. Ortiz-Marquez*, __ U.S. __, No. 18-8369, 2020 WL 3038282, at *3 (U.S. June 8, 2020). The Court takes judicial notice that Carroll has accumulated three strike dismissals pursuant to 28 U.S.C. § 1915(g). *See Carroll v. Ahboot, et al.,* Civil Case No. 3:16-cv-1853-LAB-MDD (S.D. Cal. Oct. 14, 2016) (Order Denying Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(g)) (ECF No. 3) (citing *Carroll v. Virga, et al.*, Civil Case No. 2:12-cv-01327-KJN (E.D. Cal.) (strike one); *Carroll v. Brown, et al.*, Civil Case No. 2:12-cv-2584-TLN-DAD (E.D. Cal.) (strike two); and *Carroll v. State of California, et al.*, Civil Case No. 3:15-cv-01722-LAB-WVG (S.D. Cal.) (strike three)). A court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (citation omitted). However, the Court further

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   Initial Screening of Complaint in Civil Case No. 3:20-cv-00079-BAS-RBM

#### A.   Standard of Review

Because Carroll is a prisoner and is proceeding IFP, his Complaint requires a pre-Answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).[4]  Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").  Rules 8(a) and 12(b)(6) require a complaint to "contain sufficient factual

---

finds the allegations in Carroll's complaint are sufficient, when considered as a "threshold procedural question" to plausibly suggest he faced "imminent" or "ongoing danger" of physical injury at the time of filing.  *See* 28 U.S.C. § 1915(g); *Andrews v. Cervantes*, 493 F.3d 1047, 1057 (9th Cir. 2007) (distinguishing plausible allegations of "imminent danger" exception under § 1915(g) at the "threshold stage" as distinct from the court's duty to "evaluate the merits of the suit"); *see also Williams v. Paramo*, 775 F.3d 1182, 1190 (9th Cir. 2015) (finding allegations that prison official defendants had falsely "reveal[ed] to other inmates" and started "rumors" that plaintiff was a "convicted sex offender and child molester," and had "erroneous[ly] assign[ed] … an 'R' suffix to her prison file," sufficient to satisfy § 1915(g)'s imminent danger exception).

[4] The "limited office of § 1915(g)" in determining "whether the filing fee must be paid upfront or later, . . . [is] separate" from the court's duty to "screen[] out meritless suits early" pursuant to § 1915(e)(2)(B) and § 1915A(b).  *William*s, 775 F.3d at 1189 (citing *Andrews*, 493 F.3d at 1056–57).

7

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Wilhelm*, 680 F.3d at 1121.  And while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

"Courts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference" to be part of the pleading when determining whether the plaintiff has stated a claim upon which relief may be granted.[5]  *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

## B.    Factual Allegations in Complaint

Carroll's § 1983 Complaint names as Defendants seven RJD officials, Correctional Officers ("C/O") Toele, Sanchez, Rucker, Buenrostro, and Meza, Correctional Sergeants ("Sgt") Owens and Hampton, Psych. Tech. ("PT") Maygar, and John/Jane Doe 1–100. (*See* Compl. at 2.)

In Count 1, Carroll alleges Toele violated his right to be free from cruel and unusual punishment when he "left [Carroll] handcuffed in [a] cell … from the morning of 11/27/19 – evening of 11/29/19" "in retaliation" for having "report[ed] being the victim of employee sexual misconduct."  (*Id.* at 3.)  Carroll further claims John/Jane Does 1–100 "came to [his] cell over (100) times" during those two days and "refused to [remove] the handcuffs that

---

[5] The Court is not, however, required to "to wade through exhibits to determine whether cognizable claims have been stated," when it screens a complaint pursuant to 28 U.S.C. § 1915(e) and § 1915A.  *Woodrow v. Cty. of Merced*, No. 1:13-cv-01505-AWI, 2015 WL 164427, at *4 (E.D. Cal. Jan 13, 2015).

were visible."[6] (*Id.*)  As a result, Carroll claims he suffered "psychological damages," and physical injuries to his "fingers, hands, wrists, arms, shoulders, neck, back [and] head," because he "had to sit in [his] own urine/feces as there was no way to clean [him]self." (*Id.*)

In Count 2, Carroll again cites his right to be free from "cruel and unusual punishment" and claims that "in retaliation for [his] having (past) been victim of" and having reported the "employee sexual misconduct of RJD Psych Tech Maygar and Dr. Calderon[7] and other RJD staff," Officer Sanchez "falsified an RVR [Rules Violation Report] against [him]." (*Id.* at 4.)  Carroll further contends "C/O Sanchez, C/O Rucker, PT Maygar, C/O Meza, C/O Buenrostro, Sgt. Hampton, Sgt. Owens and other RJD staff (John/Jane Doe 1–100) falsified documents labeling [him] a sex offender[,] gave them to inmates," and told them he was "a snitch, [a] child molester and other falsehoods." (*Id.*)  Specifically, Carroll alleges "they told inmate/patient Teglia [that] if he hit[] [Carroll] in the head with a bolder/rock and g[ot] [Carroll] off the yard, they would provide him with a cellphone, tobacco, [and] drugs," and would not "charge [him] with a crime." (*Id.*)  On 12/23/19, Carroll claims Teglia "bashed in the back of [his] head on both sides with a boulder," and "was rewarded with contraband from C/O Sanchez, C/O Rucker, PT Maygar, and others." (*Id.*)  Carroll claims he "spent (2) days in UCSD Hospital," and Teglia "wasn't charged with a crime nor placed in Ad-Seg." (*Id.*)

In Count 3, which Carroll also labels as "cruel and unusual punishment," he claims to have suffered "multiple falls in [his] wheelchair" on unspecified occasions while "house[d] at RJD" during the years of "2015–2020." (*Id.* at 1, 5.)  Carroll has had to "get

---

[6] Carroll adds that "RJD knew the handcuffs were missing," because "they're individually checked out by staff and must be checked in before staff is allowed to leave work." (Compl. at 3.)

[7] While Plaintiff identifies Dr. Calderon as having been involved in "sexual misconduct," in Count 2, he does not mention Calderon again, does not include Calderon in either the caption or list of RJD officials identified as Defendants, and does not ask to include Calderon as an additional party in his Motion to Amend. (*See* Compl. at 1–2, 4; *cf.* Mot. to Amend, ECF No. 5, *supra* Section III.C.)

on/off the floor to get in/out of cell(s) due to RJD not having cells big enough for [his] wheelchair," and contends he has been injured "while on state vehicles" because his wheelchair "was never properly secured." (*Id.* at 5.) Carroll claims "RJD is aware" that the "factory warning" issued by the wheelchair manufacturer cautions that chairs like his are not to "be used as seats in any vehicles," but RJD "feels it[']s above the law," and "is trying to cover all of this up." (*Id.*)

Carroll seeks $6 million in general, punitive and "emotional, psychological damages," injunctive relief enjoining Defendants Toele, Sanchez, and Rucker, John/Jane Does 1–100, and other unnamed "staff" employed at RJD and seven other CDCR facilities "from handling [him] in any manner," and the "right to amend" both his "damages and [his] complaint." (*Id.* at 7.)

## C.   Motion to Amend/Name Defendants

Soon after he filed his Complaint, Carroll also submitted a separate "Petition to Amend and Compel Writ of Mandate Naming Defendants." (*See* Mot. to Amend., ECF No. 5.) In this Motion, Carroll "contends that RJD ISU Sgt. Rocha and C/O Navarro conspired to make sure [the] inmate who hit him on the head with [a] rock wasn't charged with a crime and falsified documents regarding the crime and PREA[8] investigations leading up to the crime along with C/O Sanchez, C/O Rucker and others." (*Id.* at 1.) He further requests leave to add "Drive Wheelchair Manufacturers and State Vehicle Drivers … for

---

[8] "Congress enacted the PREA [Prison Rape Elimination Act] to address the problem of rape in prison by (1) creating a commission to study the issue and recommend national standards to prevent, detect, and respond to prison rape; (2) applying such national standards to state and federal agencies and departments that maintain prisons or detention facilities; and (3) conditioning eligibility for federal grant money on compliance with such standards." *Hatcher v. Harrington*, No. 14-00554 JMS/KSC, 2015 WL 474313, at *4 (D. Haw. Feb. 5, 2015) (citing 42 U.S.C. §§ 15602, 15605). But "[n]othing in the PREA explicitly or implicitly suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act." *Id.* at *5 (collecting cases); *accord Patrick v. Altshuler*, No. 2:17-CV-1046 AC P, 2017 WL 4539273, at *3 (E.D. Cal. Oct. 11, 2017) (collecting cases); *Farmer v. Otter*, 2015 WL 5595497, at *5 (D. Idaho Sept. 22, 2015) (collecting cases).

injuries suffered" by both him and "other inmates injured in state vehicles while in wheelchairs" as Defendants.  (*Id.*)

Carroll also attached several exhibits to this Motion that appear related to the allegations in his original Complaint.  (*Id.* at 3–9, Ex. A "Crime/Incident Report" Log No. RJD-AYD-19-12-0564, dated 12/23/19; *id.* at 10–14, Ex. B "Confidential Information Disclosure Forms" dated 1/2/20 regarding RJD-PREA-19-11-102; *id.* at 15–17, Ex. C "Rules Violation" & Supplemental Report, Log No. 6954144, dated 1/2/20 and 1/16/20; *id.* at 18–20, Ex. D "Drive Silver Sport 2 Wheelchair"/"Use and Safety.")

While this district's local rule 15.1 does not permit piecemeal amendments, in light of Carroll's pro se status, and the need to conduct an initial screening of his Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, the Court will make a one-time exception and **GRANT** Carroll's Motion (ECF No. 5).  The Court will consider the claims raised in this Motion against both Sgt. Rocha and C/O Navarro as though they were included in his original Complaint (ECF No. 1), and will incorporate Exhibits A–D as incorporated by reference pursuant to S.D. Cal. Civ. LR 15.1.a.[9]  The Court declines, however, to consider "Drive Wheelchair Manufacturers" and "State Vehicle Drivers" as Defendants at this time.[10]  Carroll is further cautioned that this means to amend is not authorized by either the

---

[9] "[E]very pleading to which an amendment is permitted as a matter of right or has been allowed by court order, must be complete in itself without reference to the superseded pleading."  S.D. Cal. Civ. LR 15.1.a. "Permission may be obtained from the court, if desired, for the removal of any exhibit or exhibits attached to prior pleadings, or order that the same may be attached to the amended pleading."  *Id.*

[10] To state a civil rights claim under Section 1983, a plaintiff must allege that a particular defendant, acting under color of state law, deprived plaintiff of a right guaranteed under the United States Constitution or a federal statute. 42 U.S.C. § 1983. *West v. Atkins*, 487 U.S. 42, 48 (1988).  Private parties generally cannot be held liable under Section 1983.  *See Monroe v. Pape*, 365 U.S. 167, 172 (1961), *overruled in part by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Watson v. Sprague*, No. CV 19-6737-AB (KK), 2020 WL 1969693, at *5 (C.D. Cal. Jan. 29, 2020) (dismissing § 1983 claims against pharmaceutical manufacturer for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)).  The Court denies Carroll's request to include any unidentified "State Vehicle Drivers" as Defendants in light of his failure to allege facts sufficient to state a plausible Eighth Amendment claim for relief with respect to Count 3.  *See infra,* Section III.D.2.

1  Federal Rules of Civil Procedure or this Court's local rules, and that it is under no
2  obligation to accept piecemeal pleadings in the future.  *See, e.g., Harrell v. Solano Cty.*
3  *Jail*, No. 2:14-CV-01592 AC P, 2015 WL 5813700, at *1 (E.D. Cal. Sept. 30, 2015)
4  (permitting "piecemeal amendment" in violation of local rules in order to conduct initial
5  screening of pro se prisoner's complaint pursuant to 28 U.S.C. § 1915A).

6  ### D.   "Cruel and Unusual Punishment" Claims

7  In all three Counts of Carroll's Complaint, he alleges different instances of having
8  been subjected to "cruel and unusual punishment."  (*See* Compl. at 3–5.)  For example, in
9  Count 1, he claims Defendant Toele "left him handcuffed on [his] cell . . . from the morning
10  of 11/27/19 – evening of 11/29/19," and that John/Jane Does 1–100 "came to [his] cell
11  over (100) times," and refused to remove them—leaving him to suffer injuries to his
12  fingers, hands, wrists, shoulders, neck, back and head, and to "sit in [his] own urine/feces."
13  *(Id.* at 3.)[11]  In Count 2, Carroll claims Defendants Sanchez, Rucker, Maygar, Meza,
14  Buenrostro, Hampton, Owens, Rocha, Navarro, "and other RJD Staff (John/Jane Doe 1–
15  100)" falsified documents "labeling [him] as a sex offender and gave them to inmates
16  telling them [he was] a snitch, [and] child molester," and that on 12/23/19 "they" told
17  inmate Treglia to hit him in the head with a boulder, rewarded him with contraband, and
18  failed to punish him after the attack.  (*Id.* at 4.)  Finally, in Count 3, Carroll claims
19  unidentified RJD staff ignored factory warnings on his wheelchair and that as a result he
20  has "suffered multiple falls" while being transported "on state vehicles."  (*Id.* at 5.)

21  ### 1.   Pleading Standards

22  The treatment a prisoner receives in prison, and the conditions under which he is
23  confined, are subject to scrutiny under the Eighth Amendment.  *Farmer v. Brennan*, 511
24  U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Eighth

25
26
27
28
---
[11] Carroll claims he needs video footage and access to "work logs for B6" during that time in order to "name the John/Jane Does." (Compl. at 3.)

Amendment imposes a duty on prison officials to provide humane conditions of confinement. *Id.* This duty includes ensuring that inmates receive adequate food, clothing, shelter, sanitation, and medical care, and taking reasonable measures to guarantee the safety of inmates. *Id.*

In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component. To state a claim, the Eighth Amendment requires allegations sufficient to plausibly show that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind. *Id.* at 834. The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id.* at 837. It is obduracy and wantonness, not inadvertence or error in good faith that characterize the conduct prohibited by the cruel and unusual punishment clause. *Whitley v. Albers*, 475 U.S. 312 (1986).

The circumstances, nature, and duration of an alleged deprivation are relevant to the question of whether a constitutional violation has occurred. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Subjecting a prisoner to a lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth

Amendment. *Anderson v. County of Kern*, 45 F.3d 1310, 1314, *as amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995).

### 2. Analysis

With respect to Count 1, and Carroll's claims of having been left cuffed in his cell from 11/27/19 through 11/29/19, the Court finds that these circumstances are plausibly sufficient to satisfy the objective component of an Eighth Amendment violation. *See id.* at 1314–15 (citing *McCray v. Burrell*, 516 F.2d 357, 366–69 (4th Cir. 1974) (finding prisoner placed naked in bare, concrete, "mental observation" cell with excrement-encrusted pit toilet for 48 hours after he allegedly set fire to his cell, while left with no bedding, sink, washing facilities, or personal hygiene items" sufficient); *Jacome v. Vlahakis*, No. 18CV0010-GPC-MDD, 2018 WL 6326307, at *8 (S.D. Cal. Dec. 3, 2018) (finding detainee denied access to a usable toilet for two days, and "forced to contend with feces on the floor and next to his water source," alleged facts sufficient to show a deprivation of 'the minimal civilized measure of life's necessities'" (citing *Farmer*, 511 U.S. at 832)).

However, Carroll's Eighth Amendment claims are nevertheless insufficient to show that Officer Toele, the only identified Defendant who is alleged to have cuffed him on the morning of 11/27/19, knew and consciously disregarded the fact that he remained cuffed for two days afterward, and was left to "sit in [his] own urine/feces" as a result. *See Farmer*, 511 U.S. at 837 (a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official is alleged to have known of and disregarded an excessive risk to inmate health or safety); *see also Eckard v. Walters*, No. C19-242-RAJ-MLP, 2019 WL 8060137, at *4 (W.D. Wash. July 3, 2019) (finding no Eighth Amendment violation where prisoner left in a cell without a toilet for over eight hours, failed to further allege that he asked defendants, or any other member of the corrections staff, to be provided access to a toilet or urine receptacle and was denied such access). While Carroll claims John/Jane Does 1–100 "came to [his] cell" and "refused to take off the handcuffs," (*see* Compl., at 3), he does not allege Toele knew that conditions in his cell posed a "substantial risk of serious harm" to him, or that Toele "disregarded that

risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.[12]  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

With respect to Count 3, and Carroll's claims of having been suffered "multiple falls in [his] wheelchair," due to "RJD not having cells big enough," or because unidentified RJD "state vehicle drivers" ignore manufacturer warnings, (*see* Compl., at 5), the Court finds these allegations insufficient to plausibly show any Eighth Amendment violation has been committed by any named Defendant.  As noted above, to state a claim, Carroll must allege factual content sufficient to plausibly show that individual prison officials were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that each of them drew that inference.  *Farmer*, 511 U.S. at 837.  Here, Carroll fails to allege that any individual person named as a Defendant actually knew he faced a "significant injury" or "excessive risk" to his health or safety if he were assigned to a particular cell or transported in a state vehicle on any specified occasion, *see id.* at 837; *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014), or that they acted with deliberate indifference to that risk.  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

With respect to Count 2, and Carroll's claims of having been labeled a snitch and/or child molester and targeted for attack by inmate Treglia on 12/23/19 by Defendants

---

[12] And while Carroll claims Doe 1–100 *were* aware that he was cuffed and refused to remove them "over 100 times" while he remained inside the cell for 48 hours and "sit[ting] in [his] own urine/feces," (*see* Compl. at 3), he must amend his pleading to identify each individual person whom he claims acted with deliberate indifference to his needs before the U.S. Marshal can or will be ordered to effect service upon them.  "A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights." *Cuda v. Employees/Contractors/Agents at or OCCC*, 2019 WL 2062945, at *3–4 (D. Haw. May 9, 2019); *see also Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, No. 18-248 DKW-KJM, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (noting that "[a]s a practical matter, the United States Marshal cannot serve a summons and complaint on an anonymous defendant").

Sanchez, Rucker, Maygar, Meza, Buenrostro, Hampton, Owens, Rocha, and Navarro, however, the Court finds his Complaint contains facts sufficient to plausibly state an Eighth Amendment claim for relief.[13]   *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678. "California's … prisoners may be murderers, rapists, drug dealers, and child molesters, but California is responsible for protecting even those sorts of people from murder by other prisoners. Indeed, the Eighth Amendment requires that prison officials 'must take reasonable measures to guarantee the safety of the inmates.'" *United States v. Williams*, 842 F.3d 1143, 1153 (9th Cir. 2016) (quoting *Farmer*, 511 U.S. at 833 ("[P]rison officials have a duty [under the Eighth Amendment] . . . to protect prisoners from violence at the hands of other prisoners."); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989) (labeling prisoner a "snitch" in the presence of other inmates is sufficient to state a claim of deliberate indifference to an inmate's safety); *Crane v. Gonzales*, No. CV-F-03-6339 OWW WMW P, 2008 WL 2168927, at *2 (E.D. Cal. May 23, 2008) (calling a prisoner a "child molester" in presence of fellow inmates stated Eighth Amendment claim), *report and recommendation adopted*, No. CV-F-03-6339 LJO WMW PC, 2008 WL 2676780 (E.D. Cal. June 30, 2008).

## E.   Retaliation Claims

In Count 1, Carroll also claims Toele "left [him] handcuffed" in his cell from 11/27/19 to 11/29/19 "in retaliation for [his having] report[ed] being the victim of

---

[13] To the extent Carroll contends that Rocha and Navarro "conspired to make sure [Treglia] wasn't charged with a crime" and to "falsif[y] documents regarding the crime and PREA investigation leading up to the crime along with C/O Sanchez, C/O Rucker and others" in his Motion to Amend, however, (*see* ECF No. 5 at 1), these conclusory allegations do not adequately state a separate plausible claim for relief. *See* 28 U.S.C. § 1915(e)(2)(b); § 1915A(b). Carroll cannot simply claim that defendants conspired against him; he must instead allege facts demonstrating that there existed a meeting of the minds to violate his rights, *see Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002), and that his constitutional rights were actually violated as a result of the conspiracy. *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006); *see also Barth v. Crume*, No. 2:19-CV-0723 AC P, 2020 WL 1528019, at *3 (E.D. Cal. Mar. 31, 2020) (dismissing pro se prisoner's "conclusory assertions about a conspiracy between all defendants sua sponte pursuant to 28 U.S.C. § 1915A), *report and recommendation adopted*, No. 2:19-CV-0723-TLN-AC, 2020 WL 2512125 (E.D. Cal. May 15, 2020).

employee sexual misconduct." (*See* Compl. at 3.)  In Count 2, Carroll also alleges Officer Sanchez "falsified an RVR against him," and joined Defendants Rucker, Maygar, Meza, Buenrostro, Hampton, Owens and other RJD staff (John/Jane Doe 1–100)[14] in "falsifying" documents he claims labeled him as a sex offender and then "giv[ing] them to inmates" "in retaliation" for his having reported to have been the victim of "employee sexual misconduct" involving Defendant Maygar and Dr. Calderon.[15]  (*Id.* at 4.)

### 1.   Pleading Standards

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).  A retaliation claim has five elements.  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  First, Carroll must allege that the retaliated-against conduct is protected.  *Watison*, 668 F.3d at 1114.  Second, he must allege the defendants took adverse action against him.  *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  Third, Carroll must claim a causal connection between the adverse action and the protected conduct.  *Watison*, 668 F.3d at 1114.  Fourth, he must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities."  *Rhodes*, 408 F.3d at 568 (emphasis omitted).  Finally, Carroll must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution."  *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114–15.

---

[14] As noted above, Carroll has sought and has been granted leave to add Sgt. Rocha and C/O Navarro as Defendants involved in the allegations set out in Count 2.  (*See* Mot. to Amend, ECF No. 5 at 1.)

[15] The Court notes that Carroll does not include any further factual allegations which explain, describe, or identify the date or circumstances surrounding the "employee sexual misconduct" he contends formed the basis for Defendants' acts of retaliation.  (*See* Compl. at 3, 4.)  Exhibits B and C attached to his Motion to Amend, however, suggests that these claims relate to PREA Case Log Number RJD-PREA-19-11-102, and reports by Carroll of having been sexually assaulted by unidentified RJD staff on November 5, 2019.  (*See* ECF No. 5 at 12, 16.)  These exhibits indicate one confidential source corroborated Carroll's claims, (*see id.* at 12), but two others do not.  (*Id.* at 11, 13.)  Exhibit C, which appears to be selected pages of Rules Violation Report Log # 000000006954144, and submitted by ISU Sgt. Rocha, dated 1/2/2020, indicates Carroll was charged with a disciplinary offense after the allegations made in PREA Case Log Number RJD-PREA-19-11-102 were "determined to be unfounded."  (*Id.* at 16.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    2.    <u>Analysis</u>

With respect to Count 1, Carroll claims only that C/O Toele left him handcuffed in his cell for two days beginning on November 27, 2019 "in retaliation for [his having] reported being the victim of employee sexual misconduct." (Compl. at 3.) Even if the Court "draws the reasonable inference" that the November 5, 2019 PREA allegations referenced in his exhibits constitutes protected conduct, *see Iqbal*, 556 U.S. at 678; *Anderson v. Delten*, No. CV 17-63-H-BMM-JTJ, 2019 WL 7484681, at *3 (D. Mont. Dec. 3, 2019) (assuming for purposes of initial screening that the filing of a PREA complaint is protected conduct), *report and recommendation adopted*, No. CV 17-63-H-BMM-JTJ, 2020 WL 60866 (D. Mont. Jan. 6, 2020)*,* and that Toele's handcuffing was sufficiently adverse and chilling, *see Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989) (noting that conduct used to discourage the exercise of First Amendment freedoms "need not be particularly great in order to find that rights have been violated" (citation omitted)), Carroll nevertheless fails to allege any facts from which the Court could reasonably infer that Toele cuffed and placed him in his cell on November 27, 2019 *because* he filed a PREA complaint. *See Hartman v. Moore*, 547 U.S. 250, 259 (2006) (plaintiff "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury"); *Brodheim*, 584 F.3d at 1271 (plaintiff must allege his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct" (quoting *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989))). Retaliatory motivation is not established simply by showing an adverse action by the defendant after protected speech; rather, the plaintiff must allege some nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this'"). Carroll has further failed to allege Toele's actions on November 27, 2019 failed to advance a legitimate penological goal. *Rizzo*, 778 F.2d at 532; *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) ("The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains."). For

these reasons, the Court finds Carroll's retaliation claims with respect to Toele as alleged in Count 1 must also be dismissed sua sponte for failing to state a claim pursuant to 29 U.S.C. § 1915(e)(2)(B)(i) and 28 U.S.C. § 1915A(b)(1).

However, with respect to Carroll's claims in Count 2 that Officer Sanchez "falsified an RVR against him," and joined Rucker, Maygar, Meza, Buenrostro, Hampton, Owens and other RJD staff (John/Jane Doe 1–100), including Rocha and Navarro in falsifying and disseminating to other inmates documents which he claims identified him as a sex offender and a snitch, because he reported acts of sexual misconduct committed by Defendant Maygar and Dr. Calderon, and then "rewarded" inmate Treglia with contraband if he "hit [Carroll] in the head with a boulder/rock and g[ot] [him] off the yard," (*see* Compl. at 4), the Court finds his allegations sufficient to plausibly state a claim of retaliation and to clear *Iqbal*'s "modest" pleading threshold. *See Dep't of Homeland Sec. Regents of the Univ. of Cal. Wolf v. Vidal*, __ U.S. __, No. 18-587, 2020 WL 3271746, at *17 (U.S. June 18, 2020); *Rhodes*, 408 F.3d at 567–68; *Watison*, 668 F.3d at 1115 (finding allegations that prison officials issued a "false disciplinary complaint" and "made false statements to the parole board, both in retaliation for grievances" prisoner had filed sufficient to plead First Amendment retaliation claims).

## F.   <u>Screening Summary</u>

For all the reasons discussed, the Court sua sponte dismisses both Carroll's Eighth and First Amendment allegations with respect to Defendant Toele in Count 1, his purported conspiracy allegations with respect to Defendants Rocha and Navarro in Count 2, and his Eighth Amendment claims as alleged in Count 3 with respect to all named and unnamed Defendants for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

However, the Court further finds Carroll's allegations with respect to Defendants Maygar, Sanchez, Rucker, Meza, Buenrostro, Hampton, Owens, Rocha, and Navarro as alleged in Count 2, are sufficiently pleaded to plausibly support both Eighth and First

1    Amendment claims for relief, and thus, are not subject to sua sponte dismissal pursuant to
2    28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

3    **IV.    Objection to Court's Ruling and Leave to Amend**

4          Finally, the Court will consider the "Objection to the Court's Ruling" Carroll filed
5    in both his civil right case, No. 3:20-cv-00079-BAS-RBM, as well as in his habeas case,
6    No. 3:20-cv-00010-BAS-BGS.  In this document, Carroll appears to conflate his habeas
7    and his civil rights suits by requesting that the Court grant him an extension of 90 days to
8    "grant[] [his] petition in full" due to COVID-19 restrictions and because he has been "back
9    and forth to outside hospitals for various issues related to medical neglect." (*Toele*, ECF
10   No. 7 at 1; *Pollard*, ECF No. 8 at 1.)  Carroll also claims a "corrupt Dr. Silva, who
11   "discriminates against blacks, transgenders, LGBTQ inmate/patients," has "take[n] away
12   his wheelchair … so he can't get to [the] law library" or access other areas of the prison,
13   and asks that Silva and unidentified "transportation officers" "be added as respondents in
14   both cases." (*Toele*, ECF No. 7 at 2; *Pollard*, ECF No. 8 at 2.)

15         Because no "rulings" have yet to issue in *Toele*, and Carroll's April 15, 2020
16   objection and request for extension of time make sense only with respect to the February
17   10, 2020 Order dismissing his first amended habeas petition, (*see Pollard*, ECF No. 6), the
18   Court construes Carroll's objection as a request for extension of time in which to file his
19   second amended habeas petition in 3:20-cv-00010-BAS-BGS and **GRANTS** that request.
20   *See Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1255 (9th Cir. 2010) (noting that
21   Fed. R. Civ. P. 6(b) must be "'liberally construed to effectuate the general purpose of seeing
22   that cases are tried on the merits.'") (citing Fed. R. Civ. P. 1); *accord Turner v. Tierney*,
23   678 F. App'x 580, 581 (9th Cir. 2017). "'Strict time limits . . . ought not to be insisted
24   upon' where restraints resulting from a pro se . . . plaintiff's incarceration prevent timely
25   compliance with court deadlines." *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987)
26   (citing *Tarantino v. Eggers*, 380 F.2d 465, 468 (9th Cir. 1967)).

27         To the extent Carroll also asks that Dr. Silva and newly unidentified RJD
28   transportation officials "be added as respondents" to both his habeas and his civil rights

1  case, however, his objection is **OVERRULED** and his request is **DENIED**. Carroll's

2  disability and wheelchair transport claims as alleged in Count 3 of his Complaint in *Toele*

3  fail to state a claim for the reasons discussed in Section III.D.2 of this Order, and "[t]he

4  federal habeas statute straightforwardly provides that the proper respondent to a habeas

5  petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542

6  U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); *see also* 28 U.S.C. § 2243 ("The writ, or

7  order to show cause shall be directed to the person having custody of the person detained.").

8  Finally, in light of his pro se status, the Court will grant Carroll leave to amend his

9  pleading deficiencies with respect to Counts 1 and 3, if he can. *See Rosati v. Igbinoso*, 791

10  F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint

11  without leave to amend [pursuant to 28 U.S.C. Section 1915(e)(2)(B)(ii)] unless 'it is

12  absolutely clear that the deficiencies of the complaint could not be cured by amendment'"

13  (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))).

**V.   Conclusions and Orders**

For all the reasons discussed, the Court **ORDERS** as follows:

**In *Toele*, 3:20-cv-00079-BAS-RBM**:

1)   Carroll's Motion to Proceed In Forma Pauperis [ECF No. 2] is **GRANTED**.

2)   The Secretary of the CDCR, or his designee, is **DIRECTED** to collect from Carroll's trust account the $4.24 initial filing fee assessed, if those funds are available at the time this Order is executed, and to forward whatever balance remains of the full $350 owed in monthly payments in an amount equal to twenty percent (20%) of the preceding month's income to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS MUST BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3)   The Clerk of the Court is **DIRECTED** to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

1     4)     Carroll's Motion to Amend/Name Defendants is **GRANTED** in part and

2    **DENIED** in part [ECF No. 5].  The Clerk is **DIRECTED** to add ISU Sgt. Rocha and C/O

3    Navarro as Defendants in 3:20-cv-00079-BAS-RBM.

4     5)     Carroll's Objection to Court Ruling [ECF No. 7] is **OVERRULED**.

5     6)     Counts 1 and 3 of Carroll's Complaint and the conspiracy claims alleged in

6    his Motion to Amend as to ISU Sgt. Rocha and C/O Navarro are **DISMISSED** in their

7    entirety for failure to state a claim upon which § 1983 relief can be granted pursuant to 28

8    U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

9     7)     Carroll is **GRANTED** leave to file an Amended Complaint that cures all the

10   deficiencies of pleading noted in this Order.  Any amended pleading must be identified as

11   his "First Amended Complaint," include Civil Case No. 3:20-00079-BAS-RBM in its

12   caption, be complete in itself without reference to his original Complaint, and be filed with

13   the Clerk of the Court no later than **August 10, 2020**.  *See* S.D. Cal. Civ. L.R. 15.1.  This

14   includes Carroll's Eighth and First Amendment claims against Defendants Sanchez,

15   Rucker, Maygar, Meza, Buenrostro, Hampton, Owens, Rocha, and Navarro as alleged in

16   Count 2 of his original Complaint, which as explained above, survive screening, and which,

17   if Carroll wishes to pursue them, must nevertheless be re-alleged should he choose to file

18   a First Amended Complaint. Defendants not named and claims not realleged in Carroll's

19   First Amended Complaint will be considered waived.  If Carroll's First Amended

20   Complaint fails to state a claim upon which relief may be granted, it may be dismissed

21   without further leave to amend.  If Carroll does <u>not</u> wish to amend his complaint to cure

22   the deficiencies noted above, and wishes instead to proceed only with his Eighth and First

23   Amendments claims against Defendants Sanchez, Rucker, Maygar, Meza, Buenrostro,

24   Hampton, Owens, Rocha, and Navarro as alleged in Count 2 of his original Complaint, he

25   may do so by notifying the Court of that decision in writing no later than **August 10, 2020**.

26   Should Carroll notify the Court that he chooses to proceed without amendment, the Court

27   will direct the U.S. Marshal to effect service upon Defendants Sanchez, Rucker, Maygar,

28

Meza, Buenrostro, Hampton, Owens, Rocha, and Navarro on Plaintiff's behalf at that time. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

**In *Pollard*, 3:20-cv-00010-BAS-BGS**:

8)     Carroll's Objection to Court's Ruling [ECF No. 8], construed as a Motion for Extension of Time to file comply with the Court's February 10, 2020 Order [ECF No. 6], is **GRANTED**.  Carroll's amended petition must be captioned as his "Second Amended Petition," include Case No. 3:20-cv-00010-BAS-BGS in its caption, comply with the directions and conform with the limitations set forth in the Court's February 10, 2020 Order, and be filed with the Clerk of the Court, *together with the $5 filing fee and/or a properly supported Motion to Proceed IFP*,[16] no later than **August 10, 2020**. Should Carroll fail to follow these directions, his habeas case will remain dismissed without prejudice and he will be granted no further leave to amend in that case.

9)     The Clerk of the Court is **DIRECTED** to file a copy of this Order in the electronic dockets of both *Carroll v. Toele, et al.*, 3:20-cv-00079-BAS-RBM and *Carroll v. Pollard*, 3:20-cv-00010-BAS-BGS. The Clerk is further **DIRECTED** to provide Carroll with a blank court-approved form First Amended Civil Rights Complaint pursuant to 42 U.S.C. § 1983, and a blank Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 form for his use and convenience should be choose to amend in either

/ / /

---

[16]  While Carroll has filed a Motion and has been granted leave to proceed IFP in *Toele*, 3:20-cv-00079-BAS-RBM (ECF No. 2), he has not moved to proceed IFP in *Pollard*, 3:20-cv-00010-BAS-BGS.  The Court first directed him to do so in that case on February 10, 2020.  (*See Pollard*, ECF No. 6 at 3.)

23

proceeding.[17]

**IT IS SO ORDERED**.

**DATED: June 23, 2020**

Hon. Cynthia Bashant
United States District Judge

---

[17] As Carroll proceeds with either or both cases, he is once again warned not to combine the two proceedings.  His civil rights case, 3:20-cv-00079-BAS-RBM, brought pursuant to 42 U.S.C. § 1983 may only raise claims related to the conditions of his confinement.  His habeas case, 3:20-cv-00010-BAS-BGS, may only challenge the validity of his conviction or length of his sentence.  *See Nettles v. Grounds,* 830 F.3d 922, 927 (9th Cir. 2016) ("'Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action.'" (quoting *Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam)).  "The [Supreme] Court has long held that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983 action." *Id.*  In fact, on January 16, 2020, this Court expressly declined to convert *Pollard* into a civil rights action in light of the Complaint Carroll filed in *Toele*.  (*See Pollard*, ECF No. 4 at 2–4 & n.1 (citing *Nettles* and taking judicial notice of civil rights complaint filed in 3:20-cv-00079-BAS-RBM)).

24